**AFFIRM; and Opinion Filed December 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-01232-CV**

**WILLIAM "BRANCH" WARREN, Appellant**
**V.**
**CARLSON RESTAURANTS, INC. D/B/A TGI FRIDAY'S, INC., Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-02122**

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Whitehill

In this premises liability case, appellant William "Branch" Warren sued appellee Carlson Restaurants, Inc. d/b/a TGI Friday's, Inc., alleging that he was injured on a rainy summer afternoon when he fell on a curbside ramp outside a TGI Friday's restaurant. The trial court granted Carlson's summary judgment motion. We affirm because Warren adduced no evidence that the ramp was unreasonably dangerous when the accident happened.

### I. BACKGROUND

**A.    Facts**

We draw these facts from the summary judgment evidence viewed in the light most favorable to nonmovant Warren:

In August 2011, Warren was a professional bodybuilder. On the twentieth of that month, he traveled to Georgia for a competition. Another bodybuilder named Wendell picked Warren up at the Atlanta airport, took him to his hotel, and then drove him to a TGI Friday's restaurant in Duluth, Georgia. It was raining when they arrived at the restaurant, and it was still raining when they were ready to leave it.

Warren went to the restroom, and Wendell pulled his vehicle up to the restaurant's main entrance. Outside the entrance there was a ramp that sloped down from an elevated sidewalk to the parking lot. The ramp had been painted yellow about two weeks earlier.

Warren left the restaurant and walked down the ramp at his normal walking pace. While he was walking down the ramp, his left foot slipped, and he fell to the ground. He was roughly in the middle of the ramp (wearing tennis shoes) when he fell.[1]

Warren "hit hard," and he heard and felt a "pop" in his knee. Wendell then took Warren to the hospital. Warren suffered an acute rupture of the quadriceps tendon that was, in reasonable medical probability, caused by his fall.

## B. Procedural History.

Warren sued Carlson for his injuries, alleging a premises liability theory. Carlson answered and later filed a combined traditional and no-evidence summary judgment motion. Warren timely filed a response and an amended response to Carlson's motion. Carlson filed a reply and objections to Warren's evidence.

After a hearing, the trial judge signed a final judgment granting Carlson's motion and ordering Warren to take nothing. The judge did not expressly rule on Carlson's evidentiary objections. Warren timely appealed.

---

[1] Warren testified that he was wearing tennis shoes. The restaurant manager, however, testified that Warren was wearing "Dockside shoes" or "leather-top boat shoes" at that time.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.). We usually review no-evidence grounds before we review traditional grounds. *Shih v. Tamisiea*, 306 S.W.3d 939, 945 n.8 (Tex. App.—Dallas 2010, no pet.).

When we review a no-evidence summary judgment, we inquire whether the nonmovant adduced sufficient evidence to raise a genuine issue of material fact on the challenged elements. *Smith*, 285 S.W.3d at 909. We review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not do so. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the nonmovant provided more than a scintilla of probative evidence on each challenged element, the no-evidence summary judgment must be reversed. *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex. App.—Dallas 2012, no pet.).

Because we affirm the judgment on no-evidence grounds, we need not discuss traditional summary judgment standards. *See Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 439 (Tex. App.—Dallas 2014, no pet.).

## III. ANALYSIS

Carlson's summary judgment motion argued that Warren had no evidence that (i) the ramp was unreasonably dangerous, (ii) Carlson had actual or constructive knowledge of the danger, (iii) Carlson breached its duty of reasonable care, or (iv) Warren suffered any loss of earning capacity damages.

Warren's brief does not contain a statement of the issues presented, as required by the appellate rules. *See* TEX. R. APP. P. 38.1(f). But Warren plainly argues that he raised a genuine

fact issue as to every challenged element, so we decide the appeal without requiring Warren to rebrief. *See* TEX. R. APP. P. 38.9(a).

## A. Applicable Law.

Although Warren's fall occurred in Georgia, the parties argue this case entirely under Texas law. Accordingly, we apply Texas law. *See El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 n.26 (Tex. 2012) (presuming that Texas law and New York law were the same because the parties did not identify any material differences between them).

The parties do not dispute that Warren was an invitee on Carlson's premises. Accordingly, the elements of Warren's claim are: (i) a premises condition created an unreasonable risk of harm to Warren, (ii) Carlson knew or reasonably should have known of the condition, (iii) Carlson failed to exercise ordinary care to protect Warren from danger, and (iv) Carlson's failure proximately caused injury to Warren. *See Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009) (per curiam).

A condition presents an unreasonable risk of harm if there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen that it or a similar event were likely to happen. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002).

## B. Does the summary judgment record contain more than a scintilla of evidence that the ramp was an unreasonably dangerous condition when Warren fell?

Warren argues that the evidence raised a genuine fact issue that the ramp was dangerously slippery at the time he fell.[2] Carlson argues otherwise. We agree with Carlson.

Warren's fall, standing alone, is no evidence that the ramp was unreasonably dangerous: "[T]he fact an accident happens is no evidence that there was an unreasonable risk of such an

---

[2] Warren's expert witness also offered some opinions that the ramp was defective in other respects, such as excessive steepness in the side slopes of the ramp. But Warren does not argue that any defect in the ramp caused his accident other than the excessive slipperiness caused by the new paint. Accordingly, we limit our analysis to the evidence of slipperiness.

occurrence; because almost any activity involves some risk of harm." *Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex. 1968).

We have applied this rule in premises liability cases. For example, in *Williams v. Adventure Holdings, L.L.C.*, No. 05-12-01610-CV, that an escalator injured a child was itself no evidence that the escalator posed an unreasonable risk of harm. 2014 WL 1607374, at *4–5 (Tex. App.—Dallas Apr. 22, 2014, pet. denied) (mem. op.). And, in *Bowen v. Sabre Realty Mgmt., Inc.*, No. 05-08-00499-CV, that a person fell on an outside staircase that had been covered with sand and salt was no evidence that the staircase was unreasonably dangerous. 2009 WL 1058736, at *2 (Tex. App.—Dallas Apr. 21, 2009, pet. denied) (mem. op.). *Cf. Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 701–02 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (evidence of similar prior slip on a wheelchair ramp the same morning as plaintiff's slip was more than a scintilla of evidence that the ramp was unreasonably dangerous).

Here, Warren argues that the affidavit of architect Peter Combs raises a genuine fact issue as to unreasonable dangerousness.[3] Combs said that he was retained to offer opinions about the ramp's safety and that he inspected the ramp on December 4, 2011, which was about three and a half months after the accident. He said that the painted surface of the ramp was "not skid-resistant" and that it was "slick to the touch." He opined that the ramp was "unsafe to walk on in ordinary shoes and weather because there is insufficient friction to prevent shoes from slipping on the surface." He also said, "This problem is compounded by the sloping surface, and rain would have increased the 'slickness' of the ramp[']s surface and made it quite likely that a person walking on the ramp would slip and fall." Combs also described the tests he performed to

---

[3] Carlson argues on appeal that Combs's affidavit is substantively defective, but we need not address this argument because we conclude that Combs's affidavit does not raise a genuine fact issue regarding this element in any event.

gauge the ramp's slipperiness and opined that the ramp was slipperier than recommended by "ADA guidelines."[4]

But, as Carlson argues, a fatal problem with the Combs affidavit is that Combs did not say what the ramp's condition was when Warren fell. Combs did not say that the ramp was probably as slippery on August 20 (when Warren fell) as it was on December 4 (when Combs inspected the ramp). He did not say that the lapse of time and exposure to the elements made the ramp more slippery, less slippery, or had no effect on the ramp's slipperiness. In short, Combs's affidavit addressed the ramp's condition only on the day he examined it.

Warren, however, implicitly contends that we can draw a reasonable inference that the ramp was in the same (or worse) condition on August 20 than it was on December 4. We are not persuaded.

We conclude that, without probative evidence to show the probable effect of the passage of time on the ramp, it would be a mere guess to infer the ramp's condition in August based on the December inspection. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) ("To raise a genuine issue of material fact, . . . the evidence must transcend mere suspicion. Evidence that is so slight as to make any inference a guess is in legal effect no evidence.").

For the above reasons, we conclude that summary judgment was proper based on the absence of any evidence that the ramp was an unreasonably dangerous condition when the accident happened. We thus need not and do not consider Warren's remaining arguments.

---

[4] Combs also opined that his tests of various points on the ramp showed those points to be below or "right at" the lowest acceptable coefficient of friction rating recommended by "ASTM."

## IV. DISPOSITION

We affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

141232F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM "BRANCH" WARREN,
Appellant

No. 05-14-01232-CV          V.

CARLSON RESTAURANTS, INC. D/B/A
TGI FRIDAY'S, INC., Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-02122.
Opinion delivered by Justice Whitehill.
Justices Lang and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Carlson Restaurants, Inc. D/B/A TGI Friday's, Inc. recover its costs of this appeal from appellant William "Branch" Warren.

Judgment entered this 30th day of December, 2015.